IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA

Waycross Division

| | | |
|---|---|---|
| IN RE:<br>DOUGLAS ASPHALT COMPANY<br><br>  Debtor | )<br>)<br>)<br>)<br>) | Chapter 7 Case<br>Number <u>09-51272</u> |
| SAVAGE, TURNER, PINSON AND<br>KARSMAN, AND KENNETH E. FUTCH,<br>P.C.<br><br>  Plaintiffs<br><br>v.<br><br>FIDELITY AND DEPOSIT COMPANY OF<br>MARYLAND AND ZURICH AMERICAN<br>INSURANCE COMPANY, ARCH INSURANCE<br>COMPANY, DUVAL COUNTY/CITY OF<br>JACKSONVILLE, TOOMBS COUNTY TAX<br>COMMISSIONER, GEORGIA DEPARTMENT<br>OF REVENUE, GEORGIA DEPARTMENT OF<br>NATURAL RESOURCES/ENVIRONMENTAL<br>PROTECTION DIVISION, FLORIDA<br>DEPARTMENT OF REVENUE, INTERNAL<br>REVENUE SERVICE, MARY JEAN SPIVEY,<br>AND KENNETH E. FUTCH, P.C.[1]<br><br>  Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Adversary Proceeding<br>Number <u>10-05003</u> |

### CERTIFICATION OF PARTIAL SUMMARY JUDGMENT AS FINAL ORDER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 54(b)

This matter comes before me on the request by defendants Fidelity and Deposit Company of Maryland, Zurich American

---

[1] Consent orders were entered dismissing defendants Toombs County Tax Commissioner, Georgia Department of Revenue, Georgia Department of Natural Resources/Environmental Protection Division, and the Internal Revenue Service. Duval County/City of Jacksonville and the Florida Department of Revenue had default judgments entered against them.

AO 72A
(Rev. 8/82)

Insurance Company, and Arch Insurance Company ("Defendants") to certify as a final order the Order Granting in Part Defendants' Motion for Summary Judgment and Denying Plaintiffs' Motion for Summary Judgment ("Partial Summary Judgment") entered on February 4, 2011. (ECF No. 132.) Pursuant to Federal Rule of Civil Procedure 54(b) ("Rule 54(b)"), I grant the Defendants' request and certify the Partial Summary Judgment as a final order.

## BACKGROUND

An involuntary bankruptcy petition was filed against Douglas Asphalt Company ("Debtor") on December 2, 2009. The plaintiffs ("Plaintiffs") in this adversary proceeding are two law firms that represented the Debtor in a number of legal matters prior to the Debtor's bankruptcy. The Defendants are pre-petition judgment lien creditors of the Debtor. The Plaintiffs filed their adversary complaint on March 16, 2010, asserting attorneys' liens ("Attorneys' Liens") totaling approximately $1.7 million in a $2 million settlement fund ("Settlement Fund") on deposit with the registry of the court.[2] The $1.7 million amount encompassed fees and costs related to several different matters, including the litigation that gave rise to the Settlement Fund ("Settlement Fund Litigation") and other related matters.

---

[2] Subsequent to the initiation of this adversary proceeding, the Defendants agreed to release $1 million from the Settlement Fund to the Plaintiffs. Therefore, the Partial Summary Judgment addressed the extent to which, if at all, the Attorneys' Liens extended to the remaining $1 million.

Specifically, the Plaintiffs' complaint requested determination of the extent and priority of the Attorneys' Liens in the Settlement Fund and payment of interest on the unpaid portion of the Attorneys' Liens. (Compl., ECF No. 1 at 9-10.) In their answers to the complaint, the Defendants asked the court to restrict the scope of the Attorneys' Liens to include only the fees and costs associated with the Settlement Fund Litigation, to deny the Plaintiffs interest on the Attorneys' Liens, and to determine the rank and priority of the Attorneys' Liens with respect to other liens in the Settlement Fund. (F&D and Zurich Answer, ECF No. 11 at 9; Arch Answer, ECF No. 14 at 12.)

The Plaintiffs and the Defendants filed cross motions for summary judgment. (ECF No. 82; ECF No. 105.) The Plaintiffs asked the court to find, as a matter of law, that the scope of their Attorneys' Liens included the full $1.7 million in fees and costs, that the Plaintiffs were entitled to interest on the Attorneys' Liens, and that the Plaintiffs were entitled to attorneys' fees associated with bringing this adversary proceeding, plus interest. (ECF No. 82-2 at 1.)

The Defendants' cross motion for summary judgment asked the court to find that the Attorneys' Liens included only the fees and costs incurred during the Settlement Fund Litigation, that the Plaintiffs were not entitled to interest on the Attorneys' Liens, and that the Plaintiffs were not entitled to attorneys'

3

fees related to this adversary proceeding. (ECF No. 105-1 at 29.) In their summary judgment motions, neither party requested a determination of the priority of liens in the Settlement Fund. Therefore, I construed the motions as motions for partial summary judgment.

Upon review of the pleadings, the briefs, and the record in this adversary proceeding, I concluded that the scope of the Attorneys' Liens encompassed only the fees and costs incurred during the Settlement Fund Litigation. (Partial Summ. J., ECF No. 132.) According to Georgia law, the Attorneys' Liens do not extend to fees and costs incurred in the course of other litigation, no matter how closely related to the Settlement Fund Litigation. The Plaintiffs' fees and costs incurred during the Settlement Fund Litigation were $750,000.00 and $216,945.97, respectively. (Pls.' Mot. for Summ. J, Ex. E, ECF No. 82-7 at 2.) Therefore, the amount of the Attorneys' Liens is $966,945.97. Furthermore, I determined that the Plaintiffs are not entitled to interest on the Attorneys' Liens, nor are they entitled to attorneys' fees related to this adversary proceeding. (Partial Summ. J., ECF No. 132.)

On October 14, 2011, eight months after the Partial Summary Judgment was entered, the Defendants filed a Motion to Stay the Adversary Proceeding until a related matter was resolved in District Court and until several indispensable parties could be

added to the adversary proceeding. (ECF No. 143.) At hearing on October 27, 2011, counsel for the Defendants said that the adversary proceeding had "turned into something else." He stated that the original goal of this adversary proceeding was to decide the scope and extent of the Attorneys' Liens, and not necessarily the rank and priority of all liens in the Settlement Fund.

Moreover, the parties also noted that the Trustee had filed a motion to approve a settlement, and upon approval, a substantial amount of additional funds would be available for distribution in the Debtor's bankruptcy case. The Trustee stated that she would file another adversary proceeding to determine the priority of liens in the entire amount available for distribution as soon as the settlement was approved by the court.[3]

The parties agreed that it would be more efficient, both for the court and the parties involved, to determine the priority of all liens in a single proceeding. Otherwise, as counsel for the Plaintiffs noted, the parties would have to go to trial regarding liens in the Settlement Fund and then turn around and make the same arguments with respect to the other funds available for distribution.

---

[3] Indeed, I authorized the Trustee's settlement on December 1, 2011, resulting in an additional $3 million for distribution. The Trustee also noted at hearing that there is potential for another $4 million to be added at a later date. As promised, the Trustee filed another adversary proceeding to determine the validity, priority, or extent of liens in all of the funds available for distribution on December 5, 2011. <u>Cardwell v. Spivey, et al.</u>, No. 11-05013-JSD (Bankr. S.D. Ga.).

At the close of hearing, the Defendants suggested that they amend their answers to withdraw the issue of priority from their prayer for relief. I granted leave and the Defendants filed amended answers withdrawing their requests for a determination of rank and priority of the liens.[4] (Arch Am. Answer, ECF No. 152 at 2; F&D and Zurich Am. Answer, ECF No. 154 at 2.) They further asked that I certify the Partial Summary Judgment as a final order.

## DISCUSSION

Rule 54(b), made applicable here by Federal Rule of Bankruptcy Procedure 7054, governs the certification of an order granting partial summary judgment as a final order. Rule 54(b) allows a court to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).

Rule 54(b) certification is a two-step process. Lloyd Noland Found., Inc. v. Tenet Health Care Corp., 483 F.3d 773, 777 (11th Cir. 2007). First, the court must determine that the partial summary judgment is a "final judgment." Lloyd Noland, 483 F.3d at 777 (citing Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 7 (1980)). That is, the judgment must completely dispose of at least one substantive claim. In re Se. Banking Corp., 69 F.3d

---

[4] It should be noted that the amended answers did not completely remove from consideration the issue of priority. The Plaintiffs' complaint requested a determination of priority, so that claim remains outstanding.

6

1539, 1547 (11th Cir. 1995)(citing Howard v. Parisian, Inc., 807 F.2d 1560, 1566 (11th Cir. 1987)). To do so, the claim must be separable from other claims in the action. See Se. Banking Corp., 60 F.3d at 1547. Claims are separable when there is more than one possible recovery or if different sorts of relief are sought. Se. Banking Corp., 60 F.3d at 1547 (citing Seatrain Shipbuilding Corp. v. Shell Oil Co., 444 U.S. 572, 580-581 (1980)).

Second, the court must determine that there is no "just reason for delay" in certifying the judgment as final and immediately appealable. Lloyd Noland, 483 F.3d at 777 (citing Curtiss-Wright, 446 U.S. at 8). The court has discretion in certifying partial judgments as final orders and must exercise that discretion in the interest of sound judicial administration, taking into account the federal policy against piecemeal appeals and the equities involved. See Curtiss-Wright, 446 U.S. at 8 (citing Sears, Robuck & Co. v. Mackey, 351 U.S. 427, 438 (1956)).

Here, the Partial Summary Judgment is a "final judgment" because it disposes entirely of a separable claim. See Lloyd Noland, 483 F.3d at 777; Se. Banking Corp., 69 F.3d at 1547. When a party asks the court to determine the scope of a specific lien and to determine the priority of all competing liens, the party is seeking different sorts of relief. See Se. Banking Corp., 60 F.3d at 1547. To determine the scope of the Attorneys' Liens in the Settlement Fund, I looked to Official Code of Georgia

(O.C.G.A.) § 15-19-14(b), which governs the creation of attorney's liens. (Partial Summ. J., ECF No. 132.) I found that the Attorneys' Liens were restricted in scope such that they included only the fees and costs incurred in the Settlement Fund Litigation and not fees and costs incurred in other related matters.

Determining the priority of all liens in the Settlement Fund is an entirely different inquiry. It requires examination of the Bankruptcy Code, the Internal Revenue Code, state tax laws, and other state laws governing the time at which a lien attaches and becomes enforceable. The liens must be compared to each other to determine their respective priorities. The amount of a lien has no effect on that lien's priority in relation to other liens. For example, had I found that the Attorneys' Liens amounted to $1.7 million, as the Plaintiffs allege, it would not change the priority of the liens with respect to any other liens in the Settlement Fund. Thus, the scope of a lien and the priority of a lien are separate determinations. Since the Partial Summary Judgment evidenced my final decision on the scope of the Attorneys' Liens, it completely disposed of a separable claim, and therefore is a "final judgment."

Furthermore, I find no just reason for delay in certifying the Partial Summary Judgment as a final order and allowing it to be immediately appealable. As stated above, the scope of the

8

Attorneys' Liens has no effect on their priority with respect to other liens. There is no reason to prevent the parties from immediately appealing my decision on the scope of the liens.

Allowing immediate appeal of the Partial Summary Judgment will not run afoul of the federal policy against piecemeal appeals. Another adversary proceeding is currently pending to determine the priority of all liens in the total amount of funds available for distribution in the underlying bankruptcy case. Any appeal pertaining to the priority of liens would likely be brought in that proceeding since it pertains to all of the funds available for distribution. It is in the best interest of judicial efficiency to allow all of the lienholders to litigate their claims in one proceeding.

Accordingly, the Order Granting in Part Defendants' Motion for Summary Judgment and Denying Plaintiffs' Motion for Summary Judgment, entered on February 4, 2011, is **ORDERED CERTIFIED AS A FINAL ORDER PURSUANT TO RULE 54(b)**.

JOHN S. DALIS
United States Bankruptcy Judge

Dated at Brunswick, Georgia,
this 13th day of January, 2012.